Good morning, Your Honors. I'm Emanuel Rios. I'm the attorney for the petitioner, Mr. ALUMA-LOPEZ. I have reserved three minutes for rebuttal. This is a petition for review from the BIA's affirmation of the immigration judge's denial of Mr. Lopez's asylum and asylum-related relief applications. Mr. Lopez is a, excuse me, Mr. ALUMA is a native citizen of Colombia whose claims are based on the likelihood of persecution if he is returned to Colombia on account of his acts of working with the DEA, U.S. DEA, as a confidential informant and as a material witness against the cartels of Mexico and Colombia. And additionally, it's in part comprised of his association with the known informant, Mr. Mendoza. The argument made to the I.J. that his enumerated ground was the imputed political opinion that the Colombia cartel-slash-government people might attach to the fact that he had been cooperating with the DEA? ALUMA-LOPEZ Yes, Your Honor. The record at 309 and 310 states that Mr. Mendoza was a 344. The 344 is the asylum application that checks the box indicating the political opinion. And 309 is specifically set out, the former counsel set out in a brief, the imputed political opinion theory. So this was presented to the I.J. This was presented to the BIA. And the BIA, it's important to note that no one picked up on this. No one addressed this issue. That's why I asked the question. And it's telling, Your Honor. There were two issues at the very beginning of this. One is on account of the nexus prong, and the other was a timeliness issue. And I'd like to state that the government has informed me graciously that they're not conceding this case on timeliness grounds. And so therefore, there's only one issue before the court. Like they're waiving their timeliness claim? Is that what you said? Well, they're waiving the opposition to statutory eligibility on the basis of an untimely filed asylum application. Okay. So they're waiving the timeliness issue. So we don't need to consider that. Right. And I believe Mr. Grimes will confirm that when he gets up here. So the issue is whether or not the record compels that there's a likelihood of persecution to Mr. Illumina on account of an imputed political opinion for his work against the Colombian and Mexican drug cartels. It's important to note also that Mr. Illumina was found to be credible. Therefore, all of the statements that he made should be taken as the truth. Well, the real question comes down to whether the IJ or the BIA was compelled to find, based on the evidence, that it was on account of imputed political opinion rather than on account of, say, retaliation or something to do with drug trafficking. Right? Yeah. That is correct, Your Honor. Okay. So why is it that either would have been compelled to find that the well-founded fear is on account of some imputation of political opinion? Well, Your Honor, the rub seems to be within the background country reports that were submitted by his former counsel. Well, we know it's wildly out of control. I mean, that's about what that says. But it doesn't exactly say why. I mean, the drug cartels don't like each other. They're scared of each other. There's drugs and debts and all sorts of violence going on. But that's not political. Well, Your Honor, I would beg to differ. I believe that the U.S. foreign policy regarding Plan Colombia, which deals with the eradication and the control of cocoa crops, is political. Oh, sure. But that's not the question. He's not fearing persecution on part, on account of the United States. What he's fearing persecution on account of is a couple of drug cartels who might think that he was a snitch. Well, Your Honor, that's certainly one way to look at it. However, I believe that the context of the civil war in Colombia is taken into account, and the U.S. foreign policy is taken into account, and the anathema to which the U.S. government is held in Colombia for the guerrillas, the government opposition who are funded almost entirely, the record shows, by narco-trafficking. Then, really, politics and drug trafficking are actually inextricably intertwined in Colombia, and that's evidenced by the U.S. foreign policy in Plan Colombia. And the record states that, at 365, 366, all of the record and the evidence, none of this was taken into account. Do you think that the I.J. and the B.I.A. considered the timeliness issue on the filing of the asylum? Well, Your Honor, there was some lip service given to it at both levels. However, the I.J. actually doesn't look like he specifically found that. He kind of left it hanging. I think that he stated something like, as for reasons that will be discussed later, I do not believe that this is timely filed. However, there are exceptions and excuses for untimely filing which were never addressed. So as a particular finding as to the untimely filing, I don't believe that the I.J. actually did make a particular finding. And as far as the B.I.A., it seems clear to me that the B.I.A. did not make any kind of specific finding in their Deno review. Well, they did deal with timeliness, didn't they? They mentioned it, Your Honor. They did mention it. But they didn't make a finding. And the B.I.A. needs to make a specific finding. If they don't make a specific finding, then it's simply dicta, Your Honor. There's no finding there. While you're waiting for your rebuttal, would you mind pointing out where in the record it is that the imputed political opinion issue was presented by you? By me? By you. Yes, Your Honor. Thank you. Thank you. I want to save the rest of the time. Mr. Grimes? Good morning. May I please the Court? James E. Grimes for the Attorney General. Do you abandon SHIP on timeliness? That's correct, Your Honor. I informed my opponent of that last Friday. Okay. Was the political opinion, imputed political opinion, presented? I believe that was the basis for his claim, the imputed. The I.J. seemed to think the basis of it was a particular social group. Did he actually focus in on imputed political opinion? I thought that's what he was focusing on. The board seemed to say that there's no connection whatsoever to any protected ground, whatever the claim is. The board specifically at page 2, there's really only one paragraph of substance in the board's decision. There are really three reasons that Mr. Olum is not entitled to asylum. First is that he failed to show his alleged fear that he might be harmed or be on account of any protected ground. He didn't show that anyone in Columbia knows about his activity with the U.S. Attorney's Office and his family remains safe in Columbia. Now, as to the failure to show connection to a protected ground, I start with the principle that opposing the criminal, nonpolitical goals of a criminal organization is not a political opinion. And to use the Court's language in this decision, Isaiah Smirini, there is no difference of political philosophies involved, imputed or otherwise. In other words, an organization should have a political objective for one's opposition to it to be a political opinion. Stepping back from whether or not there was past persecution or well-founded fear of future persecution and just looking at the imputed political opinion itself, it's true that the United States has taken a fairly public stand on the war on drugs in Columbia and has taken action against Columbia for the government's inability to control the drug cartels. Isn't that true?  And by coming into the federally, I guess he was a material witness. Our government held him here as a material witness, but he did not have to cooperate on the side of the United States in helping the DEA convict some of these drug cartel members, did he? He didn't have to. I don't know whether he had to. He didn't have to testify. He did not testify. That's correct. He gave you information. He didn't have to help you. I'm saying you. I'm saying the generic government because the INS is part of the government too. He didn't have to help you do that. He took sides by doing that. I suppose. I don't know what the quid pro quo was in that case. That's not exactly in the record. But I think I understand where Your Honor is going, but he would still have to show that the cartel would impute some sort of political opinion to him. Right. But what bothers me is that I really do want to see the record slides as to whether or not this argument was presented. But what bothers me is that at least the BIA or the IJ, or we maybe, should rule on whether this situation could constitute imputed political opinion. And I think, in fact, our court has ruled on it in three cases, Maya, Lim, and Briones. I think, Your Honor, the board. Can you discuss those cases? I'm sorry, Your Honor? Can you discuss those cases? In each one of those, there was imputed political opinion based on an anti-guerrilla position. Right. Each of those cases, and each of the cases on which Mr. Aluma relies, involve an instance in which members of an organization imputed a political opinion which was in opposition to their political goals. There hasn't been any showing that these organizations had any political goals, and there hasn't been any showing that the cartel would impute a political opinion to him. He's asserted what is essentially sheer speculation. There's no evidence in the record that the cartel would impute anything to him. And I'll come back to that in just one second. But Your Honor's point, I believe the board said that he did fail to establish a nexus between his claim, fear of persecution, and a protected ground under the Act.  Here, all we have is a potential testimony against the Tijuana-based cartel, which no one knew about outside the government, and his taped conversations, which no one outside the government knew about. How do you know that? Pardon me? How do you know that no one knew that? There's no evidence that anyone knew. Page 30301, the government says that it didn't reveal it to anyone, and the government has no evidence that anyone knew about it, specifically 30301. And I believe that he, Mr. Aluma, testified at pages 233 through 235 that he wasn't aware or he didn't know that anyone, whether anyone knew about it either. So there's no evidence, certainly no compelling evidence he can point to that anyone knew about it. And if the Arellano Felix organization seeks to harm him, it would be for retribution, if they knew about it, for what he did, or possibly to intimidate other people to not testify against them. But there's no evidence that they would impute a political opinion to him. There simply is no evidence on that issue, certainly no compelling evidence. And I think what he, what Mr. Aluma seeks to do is to confuse the Colombian government's civil war with rebel groups such as the FARC, some of whom may be funded by narco dollars, and its criminal battles with drug cartels. But isn't, I mean, isn't, I don't know if the State Department report is in this record either, but isn't it well known that the drug cartels are intertwined with the government in Colombia and that that's why our government is at odds politically with the Colombian government? He would still have to show, even if that were so, he would still have to show that the cartel would impute his actions as a political opinion, rather than as some attempt to deal with them criminally. He would have to show that. He would have to come forward with some evidence. He hasn't shown any evidence on that issue. There's certainly no compelling evidence that would show that the cartel would view this as anything other than a criminal issue and as an attempt by the cartel to prevent someone from testifying against its members to stop its criminal activities. Well, if he had been in Colombia doing this, he probably would have been killed. I can't say whether he would be killed or not. He certainly went back to Colombia in the early 1990s when he was working with Mr. Mendoza and wasn't killed and didn't indicate a problem. And his parents certainly haven't been killed. I believe he testified that his parents didn't come here and give the United States government material assistance in fighting the war on drugs. That's correct, Your Honor. But his evidence at pages 260 and 351 indicates that the cartels would punish family members of people they believed were assisting the government. And I believe that was evidence that the immigration judge pointed to at pages 48 and 49 and page 51, showing that, in fact, he doesn't have a fear. And that's certainly evidence that they don't know about it. And another point is the Ariana Felix Organization is based in Tijuana, Mexico. It's not in Colombia. He hasn't shown any evidence, and I believe the immigration judge referred to this at page 48. There's no evidence that, A, the Ariana Felix Organization knows about what he did,  So there's no evidence that anyone in Colombia even knows about this. That's the well-founded fear part. That's not the imputed political opinion part. And that's the part I'm only interested in, really, because I think that if we were to find that there was imputed political opinion, we'd have to send it back. Well, I would disagree, Your Honor, because I believe there are several bases for decisions below, one of which is the imputed political opinion issue, but there's also the issue that his family is safe, as the immigration judge referred to at pages 48 and 49, and the fact that no one knows about it. He would have to show that someone knew. I'm just saying that if we were to say, since the IJ didn't even comment on it, if we were to say it's akin to the case, our en banc case, where we just said family membership could be a social group within the meaning, you know, as an enumerated ground, but we'd send it back for all the other issues. But I believe, Your Honor, the board did comment on it and say that he didn't show a connection to any protected ground. So the agency has addressed the issue and said that he hasn't met that burden. He hasn't shown that anyone knows about it, that anyone would impute a political opinion to him, that he has a fear based on any protected ground, and his family remains safe. And as I said, the evidence indicates, his own evidence, and this was discussed, I believe, around pages 241 and 242 in his discussions with the immigration judge, his own evidence shows that the cartel would seek to punish family members of people that it believed were cooperating with the government. And so that fact that they haven't done that, the ongoing family safety, is certainly a factor that weighs against his claim. What is the situation with the S visa? The S visa, if you, I invite your attention to pages 237 and 239 of the record, and there's where the discussion is, which his counsel explains why he did not, affirmatively did not want to seek an S visa. An S visa is a visa, as I'm sure your Honor knows, that an alien can seek if the alien has information the alien can give about a criminal organization. And he specifically decided not to seek the S visa for reasons that are more properly understood under 8 U.S.C. 1184-K, which explains why he would have to forego his asylum claim and any challenge to removability if he sought and received an S visa. You'd have to weigh that. And so that was why he decided not to seek an S visa. If he wanted one, he would have to ask for it. He didn't, and so that's why he didn't have an S visa. In any event, for the reasons I've stated, we ask that you deny the petition for review. Thank you. All right, Mr. Rios. Judge Reimer, I'm just a little confused. As far as the record that where I personally – I just started this on the appeal, so I wasn't the underlying question. No, I understand. The IJ certainly said that there was no showing of any particular political opinion. The IJ didn't in terms talk about imputed political opinion, and it's not immediately obvious that that theory was presented. So my question is, where would we look to see that it was presented? Well, Your Honor, it wasn't presented by me, but it was presented, and probably in not the clearest fashion. I don't mean by you. You. Okay. I mean you as in your clients. My mistake, Your Honor. The administrative record, the last line of page 309, it specifically states, Ricardo may be determined by his persecutors to have a political opinion which is contrary. Obviously, that shows that he didn't – they weren't arguing that he had one, but it may be determined by his persecutors. That's the whole issue of imputed political opinion. What is 309? Is that the asylum application? No, Your Honor. This is a brief – this is a brief supported – excuse me, submitted by his previous attorney in support of his asylum application. So, indeed, it was brought up. There wasn't a lot of time devoted to that. It seems like the membership in a particular social group was hit harder. Nevertheless, it was brought up. All right. Let me ask you another question. What is the evidence that you presented that would compel a conclusion that a cartel would view his actions in assisting the DEA as having a political opinion adverse to them? Well, Your Honor, the State Department reports are in here. And at page 366, the State Department reports states that this is the narcotics or the narco-traffickers extended influence throughout all levels of the society. It's kind of like in Disturbia if they had a kleptocracy. Here we have a narcocracy. I don't know. See, the thing is it's easy to see in some of our cases like Mejia and Brioni's where the Petitioner was an informant for an opposing political force, that the people on the other side would go after him as an informant. But here, that's not what the relationship is. And so it is somewhat more difficult to see how it is political at all. It's a, as it were, a business squabble among drug enterprises. Well, Your Honor, I believe that the State Department reports show that the military, at 366, 367, the military and the security forces, which are the government, they align with the paramilitary groups for control of the narcotics production and trafficking. And then when you take that and you find that the government opposition, the guerrilla groups, are funded by millions of narco dollars, that makes this political. This brings us into the political arena. Okay. All right. Thank you, both of you, for your argument. The matter, as you argued, will be submitted. Thank you.
judges: Rymer, Wardlaw, Reed